SAMUEL NESBIT *v.* ST. PATRICK'S CHURCH and PATRICK MORAN.

1. If a defendant fails to notice his demurrer for argument, and the complainant omits to take advantage of the failure at the first term thereafter, he may do it at a subsequent term, without first taking an order on the defendant to bring it to argument; but, in that case, he should serve the rule to answer on the defendant before taking a decree *pro confesso.*

2. Where work has been done and materials provided, under a written contract, for building a church, and partial payments have been made, the precise amount of which the contractor does not know, and he claims a balance due for the work and materials, and that he has sustained damages by being improperly prevented from finishing his contract, he cannot sustain a bill in chancery praying for an account, a discovery of the payments made to him, and a decree for the balance due him for the work, and his damages.

3. The court cannot take jurisdiction of the case on the ground of account, or of discovery, or of preventing a multiplicity of suits.

This cause was heard before the Chancellor, at February Term, 1852, upon demurrer to the bill. The questions involved sufficiently appear by the Chancellor's opinion.

*Mr. A. Gifford,* in support of the demurrer, cited 2 *Daniell Ch. P.* 62 ; 2 *Mad. Rep.* 289 ; *Story's Eq. Pl.,* § 74; 2 *Wash. Rep.* 213 ; *Mitford's P.* 46 ; 2 *Dick.* 489 ; 1 *Mad. Rep.* 212; *Cooper's Eq. Pl.* 200 ; 4 *Johns. Ch. Ca.* 294 ; 2 *P. Wms.* 591 ; 2 *Ves.* 343 ; 10 *Ib.* 546 ; 4 *Black.* 359 ; *Holcomb's Eq.* 73, 74.

*Mr. Runyon* and *Mr. A. Whitehead, contra,* .cited 3 *Johns. Ch. Rep.* 351 ; 2 *Caine's Ca. in E.* 38, 52 ; 9 *Johns. Ch. Rep.* 407 ; 4 *Cowen* 719 ; 17 *Johns. Rep.* 374 ; *Str. Eq. In.,* § 451 ; *Edwards on Parties* 73, 49 ; 1 *Dan. Ch. P.* 449.

THE CHANCELLOR. This cause was heard upon demurrer to the bill. The counsel of complainants objected to the defendant's being heard upon demurrer, on the ground that an

order overruling the demurrer had heretofore been made, and which had not been vacated.

The bill was filed September 18th, 1849, and this demurrer on the 19th of December of the same year.

The demurrer was regularly noticed for argument and put on the list of causes in March Term, 1850. The following June Term it was not noticed, and the complainant did not take advantage of the default at that term.

On the 23d of October, 1850, of the term of September, 1850, the complainant took an order overruling the demurrer, and for the defendants to answer within forty days. The order was not served. No answer was put in, and at the following December Term, 1850, the complainant took a decree *pro confesso*, with an order of reference to Theodore Frelinghuysen, Jr., Esq., one of the masters of the court, to take and state the accounts between the parties as prayed for in the complainant's bill.

On the 6th of February, 1852, Patrick Moran, one of the defendants, made his affidavit, setting forth that the order overruling the demurrer was a surprise upon the defendants and their counsel, occurring in consequence of a misapprehension of an arrangement made between the solicitors of the respective parties as to the argument of the demurrer.

Upon this affidavit notice was given for setting aside the decree, and Chancellor Halsted, on the application of the defendants, made an order to this effect, that notice having been given of such application all further proceedings on the decree should be stayed until the further order of the court; thus the cause has since stood, until now noticed for argument on the demurrer, without the defendants having taken any further measures to set aside the decree.

The argument was heard with the understanding and arrangement of counsel, that the complainant should have the benefit of his decree, or the court decide the cause upon the demurrer, as the court might consider right and proper under the circumstances.

The defendants insist the decree is irregular, and should be vacated; that it was taken contrary to the practice of the

court; that the complainant was entitled to his order overruling the demurrer at the June Term, 1850, for default in the defendants not having noticed it at that term, and having failed to take it at that time, he could not take it at a subsequent term, without first taking an order for the defendant to bring his demurrer to hearing, and that the decree *pro confesso* having been founded on an order irregularly taken, the decree cannot stand.

Such has not been the practice, as far as my own experience goes, and I have been unable to ascertain, upon inquiry, that it has been considered by others as the practice of the court. We have no rule upon the matter. The only one in any respect analogous is that regulating taking of decrees *pro confesso,* and which is this: where a complainant omits to take a decree *pro confesso* at the first term at which he is entitled to it, he shall not thereafter move such decree until he has first taken and served an order on the defendant or defendants, if in this state, to file their answer or answers at such short day as the court may appoint, unless in cases where the time for final decree in the same cause against other defendants shall not have arrived. The rule, it will be seen, does not apply to orders overruling demurrers. I think, where the complainant takes a rule overruling a demurrer, at a subsequent term to that in which the default occurs, he should serve his rule upon the defendant before taking his decree. Yet, I believe, such has not been the practice. I should, however, order service in such a case, if my attention was called to the circumstances under which the order was taken.

But in the case before us the affidavit of Mr. Moran shows that the reason why the demurrer was not noticed, was, in consequence of an arrangement made between the solicitors of the respective parties, that there should be a hearing of the cause upon the demurrer before the Chancellor at his chambers in Newark.

There has been too much delay on the part of the defendants, first, in not bringing the demurrer to hearing, and again in not following up the rule to show cause why the decree *pro confesso* should not be set aside. I should not have been

willing to deprive the complainant of the advantage of his decree if on looking at the bill I could have satisfied myself he had a case which entitled him to a standing in the court.

The bill shows that the complainant entered into a written contract with "Saint Patrick's Church," a body corporate under the laws of this state, for doing the mason work in the erection of a new church edifice at the city of Newark. He sets out the contract, by which it appears that the corporation had the privilege, if at any time during the progress of the work they should be short of funds, to give the contractor, the defendant, notice and suspend the work. The complainant commenced working on the 25th of July, 1848, and worked about two months. The work was suspended, on notice, in conformity with the provision of the contract referred to.

On the 4th of November, 1848, the corporation gave him notice to resume the work. He alleges that the weather was then unfavorable, and complains that in July following, eight months after giving him the notice, he, in the meantime, never having tendered himself ready to proceed with the work, the corporation employed another person to complete the work.

The complainant alleges the work done by him was worth fifteen hundred dollars; that during the period he was at work he received various sums of money on account of his work, of which he has, to use his own language, no *reliable* memoranda, and cannot tell with *entire certainty* to what sum in the aggregate the same amounted.

He further alleges that Patrick Moran, who was then the president of the corporation, has the receipts in his custody and possession. There is no allegation, however, that the complainant ever called on Mr. Moran for the vouchers or receipts, or for copies of them, or for information as to their contents.

He further alleges that he verily believes there is a considerable sum of money due him for work done and materials found, and that he has sustained damage by breach of the contract on the part of the defendants, "Saint Patrick's Church," to the amount of one thousand dollars.

The bill prays for an account—for discovery as to the receipts and vouchers—and that the respondents be decreed to

pay the amount due for such work, and the damages for breach of the contract.

Upon what ground can this court take jurisdiction of the case?

Surely not on the ground of account. There has been work done by the complainant under a written contract, and some payments have been made to him on account of this work. But it is not pretended there is anything intricate in these accounts, nor is any reason given why they ought to be settled in a Court of Chancery. If this bill can be maintained on the ground of the accounts between the parties, then a Court of Chancery has jurisdiction of every case when a debt has been contracted and payments made upon it.

Courts of Chancery assumed the jurisdiction in cases of accounts, in consequence of the inadequacy of the remedy at law. The bill in equity is the substitute for the action of account at law, which, in consequence of its intricacy, and the delay and expense attending it, and even then failing to do complete justice, has become obsolete.

Can this court get jurisdiction of the case, either upon the ground that by reason of the complexity of the accounts the relief at law is imperfect or inadequate, or on the grounds of *discovery*, or of suppressing multiplicity of suits?

So many perches of mason work have been done at a specific price per perch; the defendants have made some payments, but for aught that appears in the bill of complaint, not more than three, and such are the accounts to be settled between the parties. It would be a mere pretext for assuming jurisdiction and of transferring the forum of litigation from a court of law to a court of equity, to say that there is any propriety in the court's retaining the case by reason of the nature of the accounts; and there is just as little reason for retaining it on the ground of discovery. What discovery is really needed? None but the contents of two or three receipts and vouchers of payments given by the complainant to the defendant, the knowledge of which it is not pretended is now needed for any specific purpose by the complainant, and which the defendants can use only to reduce the amount

Nesbit v. St. Patrick's Church and Moran.

which may be due on taking the accounts. If they are lost, or are not forthcoming at the proper time, the complainant can sustain no injury, but the loss will fall on the defendants.

The peculiar power of this court to compel a discovery, is not required in the case, that the ends of justice may be attained. Is it invoked as a mere pretence to give the court jurisdiction, and change the forum of litigation?

Of what advantage can it be to the complainant to have the discovery he asks? He did not do the work, nor were these payments made through the agency of others. To know the exact amount of the payments before trial cannot be of any advantage to the complainant.

CITED *in Jewett* v. *Bowman and Dringer, 2 Stew.* 176.